CITY OF PLYMOUTH v LONGEWAY

Docket No. 300493. Submitted January 10, 2012, at Detroit. Decided March 20, 2012, at 9:00 a.m. Remanded for resentencing, 493 Mich 864.

Brittney Lynn Longeway was charged in the 35th District Court with operating a vehicle while intoxicated (OWI) under a city of Plymouth ordinance corresponding to MCL 257.625(1). A city of Plymouth police officer had been alerted that some women in a car had hit a concrete barrier when they entered a parking garage. While approaching the car, the officer noticed that the backup lights and brake lights of the car were on, after which the backup lights turned off. The transmission then appeared to have been put in park again, but the tires never moved. The car was still running when the officer spoke with Longeway, who was the driver of the car. She was arrested and charged with OWI. Longeway moved to dismiss the OWI charge, arguing that she had not been operating the vehicle at the time of her arrest. The district court, Michael J. Gerou, J., denied the motion, but the Wayne Circuit Court, Carole F. Youngblood, J. reversed and ordered that the charges be dismissed. The circuit court reasoned that because the car had not moved, Longeway had not been operating the vehicle within the meaning of MCL 257.625(1). The prosecution appealed by leave granted.

The Court of Appeals *held*:

Under MCL 257.625(1), a person shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, if the person is operating while intoxicated. The word "operate," which is defined in MCL 257.35a as being in actual physical control of a vehicle, is clear and unambiguous. "Control" means "power or authority to guide or manage," "actual" means "existing in act, fact, or reality," and "physical" means "of or pertaining to that which is material." The circuit court erred by dismissing the OWI charge. Applying the statutory definition of "operate," Longeway was in actual physical control of the vehicle when she started the car, applied the brake, put the car in reverse, and then put the car back into park. Because this case did not involve a driver who was unconscious or

sleeping or a vehicle that was inoperable, it was not necessary to determine whether Longeway also placed the vehicle in a position posing a significant risk of causing a collision. *People v Wood*, 450 Mich 399 (1995), and its progeny, which discussed those and similar situations, did not apply to this case.

Reversed and remanded to the district court.

CRIMINAL LAW — OPERATING A VEHICLE WHILE INTOXICATED — DEFINITION OF OPERATING.

A person shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, if the person is operating while intoxicated; "operate" is defined as being in actual physical control of a vehicle and includes the situation of a person who starts the vehicle's engine, applies the brakes, and shifts the gears from park to reverse and back to park without actually moving the vehicle (MCL 257.625[1], 257.35a).

*Miller & Bartnicki, P.C.* (by *Cameron A. Miller* and *Michael P. Bartnicki*), for the city of Plymouth.

*Flood, Lanctot, Connor & Stablein, PLLC.* (by *Janet A. Napp* and *Paul Bernier*), for Brittney Lynn Longeway.

Before: JANSEN, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM. Defendant was charged with operating a vehicle while intoxicated (OWI) under an ordinance corresponding to MCL 257.625(1). She moved to dismiss the charge, arguing that she was not "operating" the vehicle as defined in MCL 257.35a. The district court denied defendant's motion, but the circuit court reversed and ordered that the charges be dismissed. Relying on *People v Wood*, 450 Mich 399, 404-405; 538 NW2d 351 (1995), the circuit court found that because the vehicle had not "moved," defendant was not "operating" it. The prosecution appeals by leave granted. We reverse the circuit court's decision, remand for reinstatement of the charge, and hold that defendant oper-

ated the vehicle within the meaning of MCL 257.625(1) because she had "actual physical control" of the vehicle as set forth in MCL 257.35a. A person clearly has actual physical control of a vehicle when starting the engine, applying the brakes, shifting the vehicle from park to reverse, and then shifting back to park.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. On March 7, 2010, a doorman at a martini bar known as "336" alerted Officer Kevin Chumney that he had observed some females in a Pontiac G6 hit a concrete barrier when they entered the parking deck earlier that evening. The doorman advised Chumney that the females were leaving the bar and that they appeared to be drunk. Chumney saw the vehicle, which was legally parked. As he approached, another car backed out and he waited. While waiting, Chumney noticed that the backup lights of the Pontiac were on. He believed that the brake lights were on as well. After the other car drove away, Chumney hesitated because he did not want the Pontiac to back into him. The backup lights turned off, and it appeared that the transmission had been put into park again. The vehicle "settled a little bit," but the tires did not move. Chumney activated his overhead lights and blocked the car. He approached the driver's side and spoke to defendant, who was the driver. The vehicle was still running. Defendant stated that they were not leaving because they were looking for her friend's jacket.

Defendant was charged with OWI. In the district court, defendant moved to dismiss the charge and argued, in part, that she had not "operate[d]" her vehicle as that term was interpreted in *Wood* because the vehicle was stationary and was not in a position where it posed a

significant risk of causing a collision. The district court issued an order denying defendant's motion to dismiss. The district court cited the definition of "operating" in MCL 257.35a as "being in actual physical control of a vehicle regardless of whether or not the person is licensed under [the Michigan Vehicle Code]." Citing the *Wood* decision, the district court reasoned:

> In the instant case, the Court believes that Defendant did operate a vehicle in an area open to the public designated for parking that could have caused a collision with another vehicle or person. The police in-car video shows Defendant's vehicle running apparently in reverse with the driver's foot on the brake then shifted back into park with the driver's foot taken off the brake. While the vehicle wheels did not noticeably move, this Court finds Defendant was "operating" the motor vehicle.

Defendant appealed in the circuit court. Relying on *Wood*, the circuit court reversed, explaining:

> The Michigan Supreme Court has defined "operating" in *People v Wood*, 450 Mich 399, 404-405: "Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk."
>
> The district court erred when it found that the defendant was operating the vehicle as *Wood* defined operating. It is undisputed that the vehicle was never put in motion by the defendant. It is also undisputed that the car was legally and properly parked in a designated parking spot therefore it was not put in a position posing a significant risk of causing a collision.

We granted the prosecution's application for leave to appeal. *People v Longeway*, unpublished order of the Court of Appeals, entered May 16, 2011 (Docket No. 300493).

II. STANDARD OF REVIEW

This Court reviews de novo questions of statutory interpretation. *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006). In *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003), our Supreme Court set forth the following rules regarding statutory interpretation:

> When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. To do so, we begin by examining the language of the statute. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and the statute is enforced as written. Stated differently, a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [Citations and quotation marks omitted.]

III. ANALYSIS

Defendant was charged under MCL 257.625(1), which states:

> A person, whether licensed or not, shall not *operate* a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. [Emphasis added.]

MCL 257.35a defines "operate" as follows:

> "Operate" or "operating" means being in *actual physical control* of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur. [Emphasis added.]

Defendant does not dispute that she started the vehicle, applied the brakes to her running vehicle,

shifted the vehicle into reverse, and then shifted the vehicle back into park. The prosecution argues that although the vehicle did not move, defendant "operated" the vehicle by shifting gears from park to reverse and applying the brakes. This action, the prosecution claims, posed a danger to other drivers, even if the vehicle was legally parked. For her part, defendant argues that she neither placed the vehicle in motion nor placed the vehicle in a position that posed a significant risk of causing a collision; rather, she was using the vehicle for shelter when approached by the police officer. We do not believe either position is the appropriate framework to analyze this issue because both defendant and the prosecution fail to apply the plain language of the statute. The question is simply whether defendant's actions established "actual physical control" of the vehicle, MCL 257.35a, such that defendant was "operating" the vehicle in violation of MCL 257.625(1). We conclude that they did.

Rather than focusing on the unambiguous language of the relevant statutes, the parties, the district court, and the circuit court applied principles from *Wood*, which analyzed the meaning of "operate" when discussing the companion cases of *People v Pomeroy (On Rehearing)* and *People v Fulcher (On Rehearing)*, 419 Mich 441; 355 NW2d 98 (1984). In *Pomeroy/Fulcher*, our Supreme Court considered whether individuals who were arrested after being discovered unconscious in the driver's seats of running, but motionless, vehicles were operating the vehicles for the purpose of the statute that prohibited operating a motor vehicle under the influence of intoxicating liquor (OUIL). The Court cited the definition of "operator" in MCL 257.36 as "one who is in 'actual physical control' of a motor vehicle." *Id.* at 446. The Court explained:

If the car had been in motion, the person in the driver's seat might have been found to be "operating" it even though he asserted that he was asleep. If the person in the driver's seat had been awake, he might have been found to have been in such physical control of the car as to support a conclusion that he was operating it even if the car was motionless.

A sleeping person is seldom operating anything. Certainly these sleeping persons were not operating their motionless cars at the time of their arrests. [*Id.* at 446-447.]

In *Wood*, the police discovered the defendant unconscious in his vehicle at a drive-through window of a restaurant. The engine was running, the vehicle was in drive, and the defendant's foot was on the brake. After the police arrested him, they searched his vehicle and discovered marijuana. Relying on *Pomeroy/Fulcher*, the trial court suppressed the evidence because the police did not see the defendant committing the misdemeanor offense of OUIL. The Supreme Court summarized the conclusions that it had drawn in the prior cases as follows:

This Court addressed the definition of "operate" in *Pomeroy* and the companion case, *Fulcher*. We there said that a conscious person in a stationary vehicle might have "actual physical control," and thus operate it. We suggested that no particular state of mind is required to operate a motor vehicle. We also said that a person who is sleeping in a moving vehicle might be found to "operate" it.

But the combination of a stationary vehicle and an unconscious driver in *Pomeroy/Fulcher* persuaded the Court that the defendants there were not operating their vehicles when found by the police. [*Wood*, 450 Mich at 403-404.]

After recognizing the difficulty of applying the definition of "operating" when a driver was unconscious, the Court stated:

We conclude that "operating" should be defined in terms of the danger the OUIL statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of an intoxicating liquor with other persons or property. Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk. [*Id.* at 404-405.]

The Court disagreed with and overruled *Pomeroy/Fulcher* to a limited degree, explaining:

The *Pomeroy/Fulcher* Court stated that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping." We read that statement as reflecting an assumption that there was no danger of collision in such a case. The facts of this case show that this assumption was an overgeneralization. *Pomeroy/Fulcher* is overruled to the extent it holds, for purposes of construing what conduct is within the meaning of "operate a vehicle," that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping." [*Id.* at 405.]

Several decisions from this Court have applied *Wood* in the context of sleeping/unconscious drivers discovered inside the motor vehicle, see, e.g., *People v Stephen*, 262 Mich App 213; 685 NW2d 309 (2004); *People v Solmonson*, 261 Mich App 657; 683 NW2d 761 (2004); *People v Burton*, 252 Mich App 130; 651 NW2d 143 (2002), or an intoxicated driver who was standing outside of a parked vehicle, *People v Lyon*, 227 Mich App 599; 577 NW2d 124 (1998). We also very recently applied *Wood* to a conscious driver in *People v Lechleitner*, 291 Mich App 56, 60-61; 804 NW2d 345 (2010), in which an intoxicated driver drove his truck into the freeway's guardrails. The truck came to rest in the middle of the freeway and was inoperable. The defendant was attempting to push the vehicle to the side of

the road when another vehicle swerved to avoid it and crashed into a third vehicle. *Id.* at 58. The defendant argued that he could not "operate" the truck because it was no longer functioning. *Id.* at 61. This Court approved jury instructions based on the reasoning in *Wood* that " '[o]nce a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.' " *Id.* at 60, quoting *Wood*, 450 Mich at 404-405. We rejected the defendant's contention that *Wood*'s reasoning was outmoded and that a lay dictionary should have been used to define "operation" as "to cause to function." *Lechleitner*, 291 Mich App at 61.

However, we find that *Wood* is inapplicable to this situation involving a conscious (albeit allegedly intoxicated) driver who was sitting inside a stationary vehicle and engaged in operational activity such as starting the engine and changing gears. The *Wood* Court did not purport to nullify or narrow the clear statutory definitions of "operate" and "operator;"[1] rather, the *Wood* Court clarified how the statutory definitions should be applied in a particular context, i.e., when an individual is sleeping or unconscious in a vehicle that is not moving. Neither *Wood* nor *Lechleitner* indicated that the statutory definition of "operate" is inapplicable. Neither decision addressed whether a person who applies the brakes and shifts the gears of a running, yet stationary, vehicle is in "actual physical control" of the vehicle. In this case, defendant was admittedly conscious and alert when she applied the brakes, put the

---

[1] Much like MCL 257.35a, MCL 257.36 provides: " 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway."

car in reverse, and then put the car back into park. She was at all times in *actual physical control* of the vehicle. Given a plain reading of MCL 257.35a, we find it unnecessary to determine whether defendant also placed the vehicle in a position posing a significant risk of causing a collision. That inquiry is limited to situations involving a driver who was unconscious or sleeping or, as in *Lechleitner*, whose vehicle was inoperable.

We find further support in our Supreme Court's decision in *Yamat*, which was decided 11 years after *Wood*. In *Yamat*, the Court considered the definition of "operate" in the context of the felonious-driving statute, MCL 257.626c. The defendant was a passenger in a car and grabbed the steering wheel while fighting with his girlfriend, who was driving. When the defendant grabbed the wheel, the car veered off the road and struck a jogger. *Yamat*, 475 Mich at 51. The defendant argued that he did not "operate" the vehicle because he did not have complete control over it. He argued that at most he interfered with his girlfriend's control of the vehicle. Our Supreme Court disagreed, relying on dictionary definitions of particular words in the statutory definition of "operate" set forth in MCL 257.35a. The Court observed that "control" means "power or authority to guide or manage," that "actual" means "existing in act, fact, or reality; real," and that "physical" means "of or pertaining to that which is material." *Id*. at 53-54 & n 15 (citation and quotation marks omitted). Although *Yamat* involved the felonious-driving statute, rather than the OWI statute, both statutes are part of the Michigan Vehicle Code and both statutes use the term "operate." We believe the *Yamat* Court's discussion of the meaning of that term should apply equally to the OWI statute. Defendant applied the brakes of her running vehicle, shifted the vehicle into reverse, and then shifted back into park. Applying the statutory definition of "operate," as construed in accor-

dance with the dictionary definitions set forth in *Yamat*, 475 Mich at 53-54, the evidence indicates that defendant was in "actual physical control" of the vehicle. Thus, she "operated" the vehicle. The fact that it remained stationary is immaterial.

Accordingly, we reverse the circuit court's order and remand this case to the district court for reinstatement of the charge.

Reversed and remanded to the district court. We do not retain jurisdiction.

JANSEN, P.J., and WILDER and K. F. KELLY, JJ., concurred.